Chicago Trust Company, Receiver for Roosevelt-Bankers State Bank, and Oscar C. Brown, Receiver for Burr Oak Cemetery Association of Chicago, Appellees, v. Supreme Liberty Life Insurance Company, Appellant.

Gen. No. 35,110.

Opinion filed May 13, 1931.

EARL B. DICKERSON and THEOPHILUS M. MANN, for appellant; EARL B. DICKERSON, of counsel.

LOUIS J. BEHAN and WILLIAM J. CORRIGAN, for certain appellee; BINDLEY C. CYRUS, for certain other appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an interlocutory appeal by the Supreme Liberty Insurance Company, defendant, from an order giving Oscar C. Brown, receiver of the Burr Oak Cemetery Association, a corporation, other or further powers.

It appears from the record that on December 31, 1930, the Chicago Trust Company, a corporation, as receiver for the Roosevelt-Bankers State Bank, filed its bill in equity praying for the cancellation of $129,200 worth of Burr Oak bonds issued by the Burr Oak Cemetery Association, the dissolution and winding up of the affairs of said association, and, among other things, that a receiver be appointed by the court, with the usual powers and duties of receivers in chancery, to take possession of all the property, to be by him collected, marshalled and distributed under the direction of the court.

It further appears that on December 11, 1930, a judgment was recovered against the Burr Oak Cemetery Association for a certain sum; that it has not been paid, and the Burr Oak Cemetery Association has permitted the judgment to remain unpaid for a period of more than ten days after demand by the sheriff of Cook county.

It also appears that on January 1, 1928, the Burr Oak Cemetery Association of Chicago, a corporation, executed 769 bonds of a total principal face value of $200,000; that said bonds were delivered to one Alexander Flower, pursuant to an agreement; that $70,800 worth of said bonds were sold by Flower to the Roosevelt-Bankers State Bank for the sum of $70,800 in cash drawn from said banks; that this was the only consideration paid by said Flower for said bonds, and upon information and belief it is charged that Alexander Flower wholly failed to furnish any other consideration for said remaining bonds aggregating $129,200; that the bond issue was secured by a trust deed dated December 2, 1927, on property of Burr Oak Cemetery Association of Chicago, to Carl J. Schuetze, as trustee.

In addition to the Burr Oak Cemetery Association, the Supreme Liberty Life Insurance Company, a corporation, and others, are defendants to this proceeding.

It also appears from the record that the Supreme Liberty Life Insurance Company is the holder of $60,000 principal face value, of said remaining bonds, which were delivered to the defendant insurance company by Alexander Flower.

Upon a motion based upon the bill as filed, the chancellor, on December 31, 1930, appointed one Oscar C. Brown receiver for said Burr Oak Cemetery Association, the order, among other things, authorizing said Brown to take possession of all the property, equitable interests, things in action and effects of the Burr Oak Cemetery Association, to be by the receiver collected, marshalled and distributed under the direction of the court, with full power and authority of the receiver to sue in all courts, and to do all things necessary to close up the affairs of the Burr Oak Cemetery Association, which order provided for the appointment of a re-

ceiver without complainant's bond, and for a temporary injunction without notice.

On January 15, 1921, Oscar C. Brown, receiver for the said cemetery association, filed a petition, stating, among other things, that the Burr Oak Cemetery association owns, among its assets, 40 acres of land in the township of Worth, Illinois, which have been improved and dedicated for cemetery purposes; that several hundred graves have been sold from time to time by the Burr Oak Cemetery Association, and that he believed it would be for the best interest of the lot owners and creditors of the Cemetery Association if authority were given to said receiver to operate said cemetery.

The petition further states that for the purpose of operating the cemetery, said Brown as receiver should have authority to sell lots, graves and to do other things, and, therefore, asks that he be given authority to sell lots, graves, and boxes at certain prices, to pay commissions to undertakers and others for selling graves and lots and to do other things in relation to the running of a cemetery as a going concern.

Based upon the petition of the receiver, the court below entered an order giving the receiver authority to operate the cemetery.

The order complained of grants to the receiver in this case other or further powers in the conduct and operation of the Burr Oak Cemetery Association, and generally authorizes the sale of lots and graves at fixed prices, boxes used for burial purposes, a fixed charge for digging graves, the payment of commissions to undertakers, and such persons as act as agents, the employment of help at certain salaries, and the maintenance of a petty cash fund of $50. It is pointed out by the Supreme Liberty Life Insurance Company, defendant, that the receiver is given unlimited power to sell graves and lots, so that he may without restriction dispose of the corpus of the estate of the Cemetery

Association, which would be detrimental to the rights of bondholders who have a lien upon the land used for cemetery purposes.

It is conceded by the parties to this litigation that it is the duty of the court to require the receiver to continue the business of the Cemetery Association, at least for the benefit of lot and grave owners, so that they may have the benefit of the use of said ground for burial purposes if necessity requires, which use the owners of such ground were granted when they purchased the same from the Cemetery Association.

It may be said that the lien holders, or owners of the bonds secured by the trust deed on this ground, were chargeable with the knowledge that the ground was to be used for burial purposes. That part of the order directing the receiver to continue the business for the benefit of the lot and grave owners was fully justified by the facts, and was not erroneous in permitting the receiver to operate the cemetery for that purpose. When a court of equity takes charge of property through a receiver, the property becomes chargeable with all the necessary expenses incurred in taking care of and saving it.

The object of the appointment of a receiver is to preserve the property for the benefit of all parties. Sometimes this object is best attained by continuing the business, but such right of the court to continue the business should be exercised with care and caution. It necessarily follows that the expense of the operation of such business is chargeable upon the corpus of the estate if the income derived from such property is insufficient to pay the same. *Knickerbocker v. McKindley Coal & Mining Co.*, 172 Ill. 535. That part of the order in the instant case which grants unlimited power to the receiver to sell any and all lots and graves is too broad. It may not be necessary to dispose of the corpus of the estate in order to continue to meet the expenses of the cemetery, such as maintenance, neces-

sary repairs, and other expenses incidental thereto, and the order should be limited to sell only to meet such expenses. The expense of operation is incurred on the theory that the property is better preserved and maintained in a condition that will be of benefit to all the parties.

The object of this litigation is to give the receiver authority to collect, marshall and distribute the assets under the direction of the court, and it may be that the assets may have to be sold subject to a lien of the bond-holders, if the trial court so determines, but until that time it is the duty of the receiver to preserve this property and to operate it for the benefit not only of the lot and grave owners, but also for the benefit of all other parties in interest, and if the money received by the receiver is not sufficient to pay the running expenses, the court may make the necessary running expenses a charge upon the corpus of the estate.

The order, therefore, granting other or further powers is reversed and the cause remanded for further proceedings in conformity with the views expressed in this opinion.

*Reversed and remanded.*

WILSON, P. J., and FRIEND, J., concur.